# COMMONWEALTH v. R. G. OELLERS.

APPEAL BY THE COMMONWEALTH FROM THE COURT OF COMMON
PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued June 4, 1891—Decided June 12, 1891.*
[To be reported.]

1. By § 1, article XIV. of the constitution, and § 17, act of March 31, 1876,
   P. L. 13, the office known and designated as that of city treasurer in
   Philadelphia, was changed from a mere city or municipal office to a
   county office, resting upon the organic law and beyond the power of
   the legislature to abolish: Taggart v. Commonwealth, 102 Pa. 354.
2. By such change, the provisions of § 10, act of February 2, 1854, P. L.
   21, conferring upon the city councils of Philadelphia power to fill va-
   cancies in the office of "city treasurer," have been superseded, and the
   authority to fill such vacancy is now vested in the governor of the state,
   under the act of May 15, 1874, P. L. 205: Taggart v. Commonwealth,
   supra.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 86 July Term 1891, Sup. Ct.; court below, No. 338
June Term 1891, C. P. No. 4.

On June 2, 1891, upon the relation of *Mr. William U. Hen-
sel,* Attorney General, a writ of quo warranto was issued from
the court below, returnable forthwith, commanding the sheriff
to summon Richard G. Oellers, to show by what warrant he
claimed to hold and exercise the office of county treasurer,
designated as city treasurer within the city and county of Phila-
delphia.

The information filed averred, in substance, that by the legal
effect of §§ 1, 2, article XIV. of the constitution; act of Febru-
ary 2, 1854, P. L. 21; and § 17, act of March 31, 1876, P. L.
13, the officer, known in the city of Philadelphia as the city
treasurer, was a county officer to whose office were attached
the qualifications and attributes to be found in article XIV.
of the constitution; that at the general elections held in No-
vember in the years 1876, 1879, 1882, and 1885, respectively,

---

* Argued in the Middle District and the report advanced by direction.

certain persons named were elected by the qualified voters of Philadelphia county to fill the office of county treasurer, designated by them as city treasurer ; that in November, 1888, John Bardsley was elected by said voters to fill said office from January 1, 1889, to January 1, 1892, and he entered upon and assumed the duties of said office, but the same had become vacant in consequence of his resignation; that, in discharge of the duty of filling such vacancies, imposed upon him by the constitution and laws of this commonwealth, the governor had appointed William Redwood Wright to fill such office, but Richard G. Oellers had unlawfully intruded into and usurped the same, and was exercising the duties thereof without right, contrary to law.

On the same day, June 2, 1891, the defendant appeared and filed a plea averring that, by virtue of the laws of this commonwealth, the right to fill a vacancy in the office designated as that of city treasurer within the city and county of Philadelphia, was vested, not in the governor, but in a joint meeting of the select and common councils of the city of Philadelphia ; and that on May 28, 1891, the defendant was elected by a viva-voce vote, at such a joint meeting, to fill a vacancy existing in said office, and he had duly entered security and taken the oath of office, etc.

Thereupon, the commonwealth filed a general demurrer to the plea of the defendant, and the following agreement, signed by the respective counsel of the commonwealth and the defendant, was put on file :

" It is hereby agreed between the relator and the defendant in the above case that, on the argument, the sole questions of record to be disposed of by the court are :

" 1. Has the governor of the commonwealth the right to fill the vacancy existing from the cause stated in the suggestion, in the office designated city treasurer within the city and county of Philadelphia ?

" 2. Have the councils of the city of Philadelphia the right to fill the vacancy existing from the cause stated in the suggestion, in the office designated city treasurer within the city and county of Philadelphia ? "

The court, on the same day, without opinion filed, overruled the demurrer, and entered judgment for the defendant ; where-

upon the commonwealth took this appeal, specifying that the court erred:

1. In sustaining the demurrer.
2. In entering judgment for the defendant.
3. In not entering judgment for the commonwealth.

*Mr. William U. Hensel*, Attorney General, and *Mr. Furman Sheppard* (with them *Mr. S. S. Hollingsworth*), for the commonwealth:

1. At the time the consolidation act of February 2, 1854, P. L. 21, went into effect, there was a county treasurer for the county of Philadelphia, who was elected at the general election in October, every second year, and vacancies occurring in his office were filled by the appointment of the county commissioners: act of May 27, 1841, P. L. 400; and there was a city treasurer elected every year by the select and common councils of the city: acts of March 11, 1789, 2 Sm. L. 462; January 7, 1802, 3 Sm. L. 477. By § 6 of the consolidation act of 1854, the office of county treasurer was terminated, and thereafter, down to 1876, there was no county treasurer in Philadelphia county. By § 10 of the same act, it was provided that a city treasurer should be elected by the qualified voters on the first Tuesday in May of every second year, and vacancies in the office of city treasurer should be filled by the councils. By act of March 21, 1861, P. L. 165, the time of this election was changed to the date of the general election in October of each year, and by act of August 12, 1873, P. L. (1874) 432, the term of the city treasurer was lengthened to three years.

2. Such was the legislation prior to the adoption of the present constitution. By article XIV. of that instrument, the constitutional office of county treasurer was created; and since the constitution went into effect, wherever a county exists or is created the county offices named in article XIV., among which is that of county treasurer, spring at once into existence: Walsh v. Commonwealth, 89 Pa. 419. The officer known in Philadelphia as city treasurer, is the constitutional county treasurer. He is elected at the time prescribed for the election of county officers by § 2, article VIII. of the constitution. There has never been any person voted for as city treasurer at the time prescribed by § 3 of the same article for the holding

Arguments.

of municipal elections. The officer elected at the general elections has discharged all the duties and exercised all the powers imposed upon county treasurers by the constitution and laws of the state. It is extremely difficult, therefore, to escape the conclusion that he is such constitutional officer; but, if there is any doubt as to this, looking merely at the provisions of the constitution and the election held under it, such doubt is resolved on reference to § 17, act of March 31, 1876, P. L. 13, and this point seems to be settled by Taggart v. Commonwealth, 102 Pa. 354.

3. The law for the filling of vacancies is found in § 1, act of May 15, 1874, P. L. 205, which provides that the governor shall appoint "where provision is not already made by said constitution and laws to fill said vacancies." The only law referred to by the defendant as making any other provision, is the consolidation act of 1854, which directs, in § 10, that vacancies in the office of city treasurer shall be filled by councils. This is not a provision of law for filling a vacancy in the new office of county treasurer, existing under the constitution, though the incumbent is designated in Philadelphia as "city treasurer;" it cannot apply to such vacancy if the decision in Taggart v. Commonwealth, supra, is to stand, and it should not be extended thereto unless the legislative intent is clear beyond any doubt. Nor does the provision in § 5, act of May 27, 1841, P. L. 400, for the filling of vacancies in the office of county treasurer by the county commissioners, apply, as that act was dealing with the legislative office of county treasurer afterwards abolished by the consolidation act. If the act of 1841 does apply, the decisions in Taggart v. Commonwealth, 102 Pa. 354, and Commonwealth v. Gaige, 94 Pa. 193, were wrong. As to the weight of the consideration that, according to our position, the people themselves will sooner have an opportunity of filling the office than they would under § 46, act of February 2, 1854, as construed by act of April 18, 1867, P. L. 1299, see Commonwealth v. Evans, 102 Pa. 394.

*Mr. Mayer Sulzberger* and *Mr. John G. Johnson* (with them *Mr. Ovid F. Johnson*), for the appellee Oellers, and *Mr. Charles F. Warwick*, City Solicitor, for the city of Philadelphia:

Arguments.

1. Councils are expressly authorized to fill the vacancy in the office of city treasurer by § 10, act of February 2, 1854, P. L. 21, known as the consolidation act. Their power does not rest, as was the case with reference to the office of controller, considered in Taggart v. Commonwealth, 102 Pa. 354, upon § 46 of that act, providing that councils shall fill vacancies in any elective office of the city " except where other provision is made for filling the vacancy," but upon language specifically conferring the authority with reference to this particular office. No change has ever been made, since the passage of the act of 1854, in the office of city treasurer or in the functions of that officer, and nothing appears in § 1, article XIV. of the constitution, relative to county officers, indicating an intention to work any change in the office of city treasurer. The object of the act of March 31, 1876, P. L. 13, as clearly disclosed in its title, was simply to enforce the directions of the constitution with reference to official compensation and fees ; and it was in the line of the legislative power and in pursuance of good policy, to subject the city treasurer of Philadelphia to the provisions of the act. But no intention to change the term of that office, or to provide for the manner of his election, is disclosed either by the title or by the body of the act. And by act of June 1, 1885, P. L. 37, known as the Bullitt Bill, the city treasurer is made the head of one of the departments of the city government, and his qualifications and duties as such are prescribed.

2. The present constitution cannot be expounded intelligently without taking heed of the fact that its main feature is the assault upon special and local legislation, and of the rule that every presumption is against such legislation. In view of this, it is impossible to believe that the convention intended to pass a special law for Philadelphia county opposed to the general law of the state. It is true that Philadelphia then had its city charter, in the act of February 2, 1854, P. L. 21, which was allowed to stand ; but the convention went as far as it could in restricting special and local legislation, and repudiated for the future the principle on which the existing local legislation rested. In every other county than Philadelphia, vacancies in the office of county treasurer are filled by the county commissioners, under the act of May 27, 1841, P. L. 400. In

the whole history of Pennsylvania, treasurers have always been appointed, in cases of vacancy, by officers elected by the people of the locality. It is unreasonable, and impossible to believe, that the constitution was intended to repeal the consolidation act, in order to substitute for it a law different from that applicable to the rest of the state, by taking away the right of local self-government from Philadelphia and vesting the governor with the appointment of the treasurer. At all events, such a change, if made either by the constitution or by a statute, would be made directly and in unmistakable language. An attentive examination fails to find the provision effecting such a change.

3. The constitution itself gives the governor no power to fill this vacancy; and, until the passage of the act of May 15, 1874, P. L. 205, it could not even be claimed that he had any such power. If we do not find it in that act, it does not exist. The act provides that the governor shall appoint, in case of a vacancy, only "where provision is not already made by said constitution and laws to fill said vacancy." It is very doubtful if the words, "already made," can be construed so as to cover the case of a vacancy for which provision was made at the date of the act, but which, by virtue of subsequent legislation, is now unprovided for; but, be that as it may, there is no subsequent legislation taking away from councils the power which they possessed in 1874. The act of March 31, 1876, P. L. 13, under which the city treasurer is to be regarded as a county officer for the purposes of its provisions respecting salary and fees, does not do so, either expressly or by necessary implication. Without negative words, a subsequent general statute does not repeal a prior special statute: Smith's Est., L. R. 35 Ch. Div. 595; Bounty Accounts, 70 Pa. 92; Rounds v. Waymart Bor., 81 Pa. 395; Seifried v. Commonwealth, 101 Pa. 200; Townsend v. Little, 109 U. S. 512.

4. In order to discern in the constitution, or in the acts of 1874 and 1876, any power of the governor to fill this vacancy, we must ignore § 10 of the consolidation act, or we must attribute to the case of Taggart v. Commonwealth, 102 Pa. 354, a meaning not to be found in it, to wit, that the consolidation act was repealed, at least in part, by the constitution. This is a total misconception of the decision in that case. Not a word

was said about such a repeal, and there was no question of repeal in it. The decision was rather an affirmance of the doctrine that the consolidation act is still in force; and its only effect was to declare that the office of city controller, there being no special provision for the filling of vacancies and having dropped out of the class provided for in § 46 of the consolidation act, came within the act of May 15, 1874, P. L. 205, as presenting a case in which there was no other provision to fill the vacancy. This being so, the interpretation of § 10 is easy. This specific vacancy, by name, is to be filled by the councils, without regard to the intrinsic character of its functions. Even in the act of 1854, the name of city treasurer was but a label to indicate a man invested with the triple functions of city treasurer, county treasurer, and deputy state treasurer. See in this connection Philadelphia v. Martin, 125 Pa. 583. A consideration of the duties of this officer will indicate, we think, that it is eminently proper that vacancies should be filled by the city councils, rather than by the governor; and in view of the fact that the power was expressly conferred upon them, and no legislation has taken it away, we press upon the court the importance of sustaining the validity of the defendant's appointment.

OPINION, MR. CHIEF JUSTICE PAXSON:

The commonwealth, through her attorney general, demands to know by what authority the defendant, Richard G. Oellers, claims to hold the office of county treasurer, designated as city treasurer, of Philadelphia, and to exercise the functions thereof.

It appears by the defendant's plea that he claims title to said office by virtue of his election thereto by a viva-voce vote of the councils of said city, at a joint meeting thereof, on May 28, 1891, to fill a vacancy occasioned by the resignation of John Bardsley. It is contended by the attorney general that, by the constitution and laws of this commonwealth, it was the duty of the governor to appoint a suitable person to fill such vacancy, and that, in the performance of that duty, he had appointed William Redwood Wright as such suitable person. We have thus the issue, sharply defined, whether the power to fill the vacancy in question is lodged in the city councils or in the governor.

If this were a new question, or one involving a new principle,
we might feel it necessary to discuss it at some length.   As,
however, it is a mere threshing of old straw, an elaboration of
it is not requisite.   Every question now presented was raised
and decided in Taggart v. Commonwealth, 102 Pa. 354.   It is
true, that contention was over the office of controller, while
this is over the office of treasurer; but this makes no essential
difference, as the same law applies to each.   Both offices have
been changed by § 1, article XIV. of the constitution, and by
the act of March 31, 1876, P. L. 13, from a mere city or muni-
cipal office, which the legislature may destroy at will, to a
county office, resting upon the organic law, and beyond
the power of the legislature to abolish.   We do not propose
to re-open the discussion of the case upon this point.   Tag-
gart's case was carefully considered and properly decided.
We were aided by a very clear and able opinion by the late
Judge Ludlow, who decided that case below, and subsequent
reflection has but confirmed us in the correctness of that deci-
sion.   It is not needed, therefore, to discuss this point again.
It is sufficient to say, that, for the purposes of this case, we
must regard the office designated as city treasurer, as a county
and not a city office.   The treasurer, by whatever name he
may be called, is a county officer, exercising his functions over
the entire territory of the city of Philadelphia, which is co-
extensive with that of the county, just as the sheriff, recorder
of deeds, and other county officers exercise their functions
over the same territory.

Assuming then, as we are bound to do, that the treasurer is
a county officer, we come directly to the only question in the
case, in whom is the authority lodged to fill a vacancy in said
office?

The law is not even doubtful upon this point.   It is declared
by § 2 of article XIV. of the constitution, that " all vacancies,
not otherwise provided for, shall be filled in such manner as
may be provided by law."   The law which provides for the
filling of such vacancies is the act of May 15, 1874, P. L. 205,
which declares: " That in case of a vacancy, happening by death,
resignation or otherwise, in any office created by the constitu-
tion or laws of this commonwealth, and where provision is not
already made by said constitution and laws to fill said vacancy,

it shall be the duty of the governor to appoint a suitable person to fill such office," etc.

Just here the point comes in which the defendant contends distinguishes this from Taggart's case. His allegation is that the governor cannot fill this vacancy, because another mode of doing so is provided by the constitution and laws; and he points us to the tenth section of the act of February 2, 1854 (consolidation act), P. L. 21, which provides, inter alia, that "any vacancy in said office (city treasurer) shall be filled by the city councils, by viva-voce vote in joint meeting." This very point was made in Taggart's case. It was raised by the pleadings, argued by counsel, and decided by the court. It is true, no reference was made to it in the opinion of Chief Justice MERCUR. It was fully discussed in the court below, and the case having been decided here upon the broad ground that the controller was a county officer, the point in question became of no practical importance. It is too plain for argument that city councils cannot fill a vacancy in a county office. They might as well attempt to fill a vacancy in the office of sheriff. In view, however, of the peculiar circumstances of this case, and the zeal with which this point has been again pressed upon us by the able counsel representing the defendant, a brief reference to it may not be inappropriate.

As before observed, the tenth section of the act of 1854 provided for the filling of a vacancy in the office of city treasurer by a viva-voce vote of city councils. The forty-sixth section of said act contains the further provision that:

" Whenever any elective officer of said city shall die, or become incapable of fulfilling the duties of his office, his place, except where other provision is made for filling the vacancy, shall be filled by a joint vote of city councils, until the next city election and the qualification of the successor in office : Provided, That such vacancy shall exist at least thirty days before the next city election, otherwise such vacancy shall be filled at the next election thereafter."

The controller was "an elective officer of said city," and came directly within this provision. A vacancy in his office was as fully provided for in the act of 1854 as was a vacancy in the office of treasurer. It was contended in Taggart's case, just as it was in this, that because of such provision, the gover-

nor had no power to fill the vacancy.   We had precisely the same arguments then that we have now.

It will be observed that the tenth section of the act of 1854 does not fix the term during which a treasurer elected by councils to fill a vacancy shall hold said office.   It was contended that, as the term was not designated, he would be entitled to hold for the balance of the unexpired term, whatever that may be.   This position cannot be sustained.   It is in direct conflict with our whole system and policy in filling vacancies.   In all our legislation upon this subject, it is plain to see that in filling vacancies in elective offices the policy of the law has uniformly been to return to the people, as soon as reasonably practicable, the election of a successor.   Hence, in nearly if not quite all elective offices from the governor down, if a vacancy occurs more than three calendar months prior to the next election, it can only be filled until said election and the qualification of the successor.   That a departure from this rule was not intended by the tenth section of the act of 1854, is manifest by an examination of the forty-sixth section thereof, which, as before observed, provides that vacancies in all elective offices of said city shall be filled only until the next city election.   The tenth and the forty-sixth sections of the act of 1854 must be construed together.   They are a part of the same act and the same system.   Thus considered, we find that in case of a vacancy in the office of treasurer, his successor is to be elected by a viva-voce vote of councils, while in the case of every other elective officer the vacancy shall be filled by a joint vote of city councils ; in both cases the person so elected shall hold until " the next city election."   It follows, necessarily, that if the election by councils in this case has the authority of law, the defendant would hold the office until the next city election in February, 1892 (except for the accident that his term expires in January next), at which time it would not be possible to elect his successor.   Being a county officer, his election can only take place at the general election, and this has been the uniform practice under the constitution and the act of 1876. The next election for county treasurer will be held in November next, and the term of the person then elected will commence on the first Monday of the following January.   This would be several weeks prior to the expiration of defendant's

term under his election by councils, except for the accident above stated. The principle contended for would go to this extent.

This incongruous, if not absurd result would necessarily follow any attempt to force the constitution into harmony with legislation existing at the time of its adoption.

It is proper to say, in justice to the learned judges of the court below, that their judgment was practically pro forma and entered for the sole purpose of sending the case up for an early decision. Under the circumstances, we decided to hear and dispose of it in that shape at the earnest request of both parties.

> The judgment is reversed and judgment is now entered for the commonwealth upon the demurrer. It is further considered and adjudged by the court that the defendant, Richard G. Oellers, be, and he hereby is ousted from the office of county treasurer, designated as city treasurer, of Philadelphia, and from the fees and emoluments thereof.

DISSENTING, MR. JUSTICE WILLIAMS:

There is no public question involved in this case. It is a struggle between rival appointees for a few months' possession of an office that is to be filled by the voters of Philadelphia at the next election. No personal objection is made to either. On the other hand, it is freely conceded that both are men of ability, experience, and personal integrity; so that, whichever of them may succeed, the funds of the city and the interests of the taxpayers will be secure. This case has, nevertheless, a remarkable history. The suggestion of the attorney general was filed in the court below on the second day of this present month. On the same day, a writ of quo warranto issued and was served. On the same day, a demurrer was filed, overruled and judgment entered. On the same day, a certiorari issued from this court and the record was removed. Paper-books were prepared on the third. On the fourth, in the last hours of the session for the Middle District, the case was fully heard. Now, on the twelfth, this court is re-convened in adjourned session for the sole purpose of entering a final judgment. Any other case on the calendar has an equal claim to consideration and to prompt decision.

Opinions Dissenting.

The question is raised upon the following facts : By the consolidation act of 1854, the limits of the city of Philadelphia were extended so as to include the entire county. In the merger and consolidation of the several local governments previously existing, the office of county treasurer was, among others, abolished, and most of its duties transferred to the city treasurer. Since 1854, the office of county treasurer has not been restored by any distinct legislative enactment; nor has that of city treasurer been abolished, or its duties diminished or modified. No person has been elected to an office styled county treasurer, in the county of Philadelphia, for nearly forty years. A person has been regularly elected and commissioned as city treasurer during all that time. The last person so elected and commissioned was John Bardsley. He gave bonds as city treasurer, and entered upon the duties of the office, which had been very clearly and distinctly defined by the recent legislation known as the Bullitt Bill, or new city charter. On the thirtieth of May last he sent his resignation to the city government.* It was accepted by the councils, and a person was appointed to fill the vacancy so made, who has qualified and entered upon the duties of the office. The governor has also appointed a person to the same vacancy, claiming that the office is not that of city treasurer, but that of county treasurer.

If the office is a city office, then it is admitted that the power to appoint resides in the councils. Our question then is, what kind of a treasuryship did John Bardsley hold? Did he hold the office of city treasurer, which is unquestionably an existing office and to which he was elected and commissioned, or did he hold the office of county treasurer, which was abolished in 1854 and to which he was neither elected nor commissioned? The latter branch of the alternative is affirmed, and the position rests on two considerations :

1. The constitution in enumerating county officers names a county treasurer as one.

2. The act of 1876 declares that in cities of the first class, the office of city treasurer shall for certain purposes " be regarded as " a county officer.

---

* Bardsley's resignation was transmitted on May 21st, to take effect on May 30th; it was accepted by councils on May 28th.

As to the first of these, it is only necessary to say that, at the adoption of the constitution, the office of county treasurer in Philadelphia had been abolished. If, as we have repeatedly held is not the case, such constitutional provisions are self-enforcing, it is nevertheless true that in this city this one has not been obeyed by the election of such an officer, and I cannot understand by what modification of the cy pres doctrine the state can seize and appropriate that city office whose functions most nearly resemble those of the vacant county office.

As to the second, the answer seems to me equally plain. The act of 1876 relates to existing county officers in large counties having a population of one hundred and fifty thousand or more. Its title declares its object and scope fully. It is " to carry into effect § 5 of article XIV. of the constitution, rela-tive to salaries of county officers." To do this, it requires such officers to pay over the fees collected by them to the state or county, as the case may be, and provides, in lieu thereof, a fixed salary as compensation for their services. That of county treasurer in the counties affected is fixed at ten thousand dol-lars per annum. But there was one county in the state whose boundaries were at the same time the boundaries of a city including exactly the same territory. In this county the legis-lature knew that there was no county treasurer, but that the same functions were exercised by the city treasurer. They did not intend to leave the old system of fees to survive in the city whose lines were co-incident with those of the county, any more than it would have survived in the county. Accord-ingly, the seventeenth section of the act of 1876 makes a special provision for cities whose lines include an entire county, and declares that in such cities " all the officers known therein as city treasurer, city controller, city commissioners, shall sever-ally be regarded as county officers," and as such have the same salary, and pay over fees collected by them, in the same manner " as if they had been elected or appointed as county officers and had been designated as such." In other words, the city officers enumerated shall, for the purpose of fixing their sala-ries and requiring them to pay over fees collected by them, be regarded as county officers, so as to be included in the opera-tion of the act as fully as if they " had been elected " and " been designated " as county officers. This does not profess

to change the character, powers, or designation of those officers, or the manner of their election or appointment. It changes only their compensation, and the manner in which it is received by them. This it does by extending the law relating to county officers so as to include them in the same manner as if they had been elected and designated as county officers, instead of having been, as the fact was, elected and designated as city officers. The title of the act gives no hint of any other purpose. If its provisions would, by any fair interpretation, abolish the office of city treasurer, or revive that of county treasurer, or change the mode of election or appointment of the city treasurer, it would be to that extent clearly unconstitutional, because no such purpose is expressed by or included in the title. If John Bardsley held a county office he holds it still. He has resigned only the treasurership of the city, and this he has surrendered to the only body having power to fill the vacancy.

My own conclusions may be formulated thus:

1. The office of city treasurer is an existing office in the city of Philadelphia. Its existence is shown and its powers are defined by several acts of assembly, beginning with the consolidation act and including the new charter of 1885.

2. The office of county treasurer is not an existing office in Philadelphia county. It was abolished in 1854, and has never been restored or treated as surviving for any purpose whatever.

3. Both these propositions are assumed by the act of 1876, and are the basis on which its provisions rest. It treats the city treasurer for one purpose only as though he was a county officer, and distinctly recognizes the fact that for other purposes he is not one.

4. The vacancy occasioned by the resignation of the office of city treasurer by John Bardsley is properly filled by the appointment of the respondent by the city councils.

For these reasons, I would affirm the judgment of the court below. In so doing, the authority of Taggart v. Commonwealth, 102 Pa. 354, is not disturbed. In that case, there was no specific provision in the act of 1854 for filling a vacancy in the office of city controller, and the case is therefore distinguishable from this.

DISSENTING, MR. JUSTICE MITCHELL:

The authority of the governor to fill a vacancy in the office of treasurer of Philadelphia rests solely upon the act of May 15, 1874, P. L. 205. If not found therein, it is admitted that it does not exist. That act provides for an appointment by the governor in case of a vacancy in any office created by the constitution or laws of the commonwealth, " where provision is not already made by said constitution and laws to fill said vacancy." Hence, if there is any existing provision for filling the vacancy, the governor obtains no power to do so by the act of 1874.

The office of city treasurer of Philadelphia, as it has in substance existed since 1854, was created by the consolidation act of February 2, 1854, P. L. 21. That act prescribes the mode of his election, his bond and oath of office, his duties, powers and liabilities. The office as it exists to-day is defined and regulated by the city charter under the act of June 1, 1885, P. L. 37, popularly known as the Bullitt Bill. Under this act the office is a department of the city government of which the city treasurer is the head, and the act provides that " he shall be elected and give security," and his duties shall remain " as now provided by law; " that is, as already seen, by the act of 1854. It is not claimed by any one that the constitution, or any other statute than those cited, makes any express provision for the definition, limitation or regulation of the office. Turning, then, to the act of 1854, we find that the case of a vacancy is fully, exactly and specifically provided for in § 10, by which " any vacancy in said office shall be filled by the city councils, by viva-voce vote in joint meeting." There is no doubt or ambiguity about this provision, nor is there any pretence that any subsequent act has, in express terms, repealed or supplied it. Why, then, is it not a sufficient " provision already made " by the law, to exclude the only power given to the governor by the act of 1874?

It is said that the office has been made a county office by the constitution, § 1 of article XIV., which declares that " county officers shall consist of sheriffs, . . . . treasurers," etc. It is argued by appellee that this clause worked no change in the position of the city treasurer, inasmuch as there were, in all the counties except Philadelphia, treasurers who unquestionably

were county officers to whom this provision would apply, and
the constitution, while aiming at an unbending cast-iron uni-
formity in many things in which the people had hitherto been
free to consult their own diversities of situation and interest,
nevertheless did not intend to affect existing local and special
laws, except in cases expressly named.    And such has been the
uniform construction by this court.    If the present question
were open I should deem this the sound view, but I am con-
strained by the case of Taggart v. Commonwealth, 102 Pa. 354,
to consider the question closed.    By that decision, from the
authority of which I do not desire in any way to derogate,
though I think it was wrongly decided, it was settled that the
section of the constitution cited made the officers named there-
in county officers, though they retained their titles of city con-
troller, city treasurer, etc.    But this of itself does not advance
the argument a single step.    The change of position from a
city to a county office is a mere change of schedule, so to speak;
a change from one class to another, not necessarily involving
any change in the office itself.    To determine the effect of the
change in this respect, we must look at matters of substance,
at the mode of election, the powers and the duties of the officer,
by whatever name he may be called.    And when we so look
we find nothing.    By the wording of the constitution the elect-
tion for a county officer was put in November, while that for a·
city officer is in February.    But the constituency which elects,
and the functions of the officer when elected, remain the same.
As already shown, these were and are, before the constitution
of 1874 and since, established, defined and regulated by the
acts of 1854 and 1885.    The constitution did not repeal the
act of 1854, nor in any way affect § 10, except by making the
treasurer elected under it a county instead of a city officer, a
change which in no wise affected any matter of substance in
regard to him or his office.    The distinction between the county
of Philadelphia and the city of Philadelphia is, from any point
of view, of the most technical and shadowy kind, and, with re-
gard to this particular office, it has no existence except in the-
ory.    The county has no taxes, no taxpayers, no treasury and
no treasurer, which are not the taxes, taxpayers, treasury and
treasurer of the city.    It suited the doctrinaire tendency of the
constitutional convention to make the office one of the county

list for the sake of nominal uniformity, but the change in no manner affected the practical substance of the office or the officer, and so clear has this been to all eyes, that no change has been made even in his title. He is still, under the constitution as under the act of 1854, legally known as the city treasurer, and under that title, county officer though he be, that act prescribes the scope of his office, its powers, duties and liabilities, and expressly and specifically the mode in which a vacancy shall be filled. He has been transferred from one class to another, but in all other respects he and his office are unchanged.

A strenuous effort was made on behalf of appellant to get away from this conclusion by harping on the forty-sixth section of the same act, and the decision of this court in Taggart v. Commonwealth, supra. But that section has no application to this case. The act provided for the election, duties, etc., of seven principal executive officers of the city, viz., mayor, marshal of police, city treasurer, receiver of taxes, controller, commissioners, and solicitor. Section 7 provides, in case of a vacancy in the office of mayor, that councils shall forthwith, in joint meeting, elect viva voce a qualified person to serve, etc. Section 10, as already discussed, provides expressly for filling a vacancy in the office of treasurer. No specific provision is made as to the other five principal officers; they are lumped together as elective officers of the city in § 46, and the method of filling the vacancies is not the same as in the case of the treasurer, though also by the councils. This part of the section, in its very terms, is excepted from application "where other provision is made for filling the vacancy," and has no relevancy to the mayor or the treasurer. It might have been repealed at any time without in any way affecting the mode of filling a vacancy in either of those offices. Herein is the essential and very obvious distinction between the present case and Taggart v. Commonwealth.

In that case the office in question was the city controllership, as to which there was no specific provision for a vacancy. It could be filled by councils only as a city office, under the general terms of § 46, and hence that case, by a very narrow construction, which disregarded the substance of the law and stuck in the very outside of the bark, held that when it theoretically ceased to be a city office it was taken out of the terms of the

act of 1854, and, there being no other law regulating the vacancy, the appointment went to the Governor under the act of 1874. Section 46 continued in force notwithstanding the constitution, and its application to the case of an admitted city office is not disputed. All that Taggart's case decided was, that the city controller was not within its terms. But, as to the city treasurer, § 10 of the act of 1854, also still in force, provides specifically for the filling of a vacancy. The act of 1874, therefore, by its own terms, has no application.

There remains only to be noticed the act of March 31, 1876, P. L. 13, which, it is argued, makes the city treasurer a county officer. This may be very briefly dismissed. First, I have endeavored to show that the mere nominal change from a city to a county office, while the whole scope and functions of the office continue unchanged under the old law, does not in any degree abrogate the specific provision of that law for filling a vacancy. If this is so, in the case of a change by the clause of the constitution, a fortiori it is so in the case of a statute. But secondly, the act does not make any such change. The title and the body of it are alike limited to the subject of fees and salary under § 5 of article XIV. of the constitution; and § 17 of the act, which applies to Philadelphia, does not provide that the city treasurer, etc., shall be county officers, but that they shall "*be regarded* as county officers" for the purposes of the act, to wit: shall be salaried and pay their fees into the public treasury. The act has no wider scope, and therefore no application to this case. Thirdly, even if the act could be regarded as having a broader effect and as changing the treasurer from a city to a county officer, and waiving the question of constitutionality which would be raised in that view, such effect would be repealed by the act of 1885, already cited, which clearly makes him the head of a city department. Of course, if he is made a county officer by the constitution, the act of 1885 cannot turn him back into a city officer, but the argument from the constitution must stand by itself. It cannot get any aid from the act of 1876, because that act, if it meant to make such a change, is clearly repealed by the later act of 1885, on the same subject. The fact is, as already discussed, the change was a merely nominal one, which had no effect on the previously existing law, and neither the constitution, the act of 1876, nor the act of 1885, ever contemplated it in any other light.

For these reasons I would affirm the judgment.

Since writing the foregoing I have had the opportunity of hearing the opinion of my Brother WILLIAMS, and I concur in what he has said, except that I concede somewhat more weight to the decision in Taggart v. Commonwealth, as settling the construction that the constitution made the treasurer a county officer. That is the only difference in our views upon this case.

MR. JUSTICE GREEN:

I concur in dissenting from the opinion of the majority of the Court.