Commonwealth ex rel. Dilworth v. Pastorius, 5th

*Richardson Dilworth,* for plaintiff.

*Bernard G. Segal* and *William A. Schnader,* for defendant.

PER CURIAM, June 1, 1953.—On November 4, 1949, Richardson Dilworth was elected to the office of Treasurer of the City of Philadelphia. On January 7, 1952, he vacated this office to assume the duties of District Attorney of Philadelphia, to which office he had been elected on November 4, 1951. Francis Daniel Pastorius, 5th, was thereupon appointed by the Hon. John S. Fine, Governor of Pennsylvania, as city treasurer, to fill the vacancy in that office.

The instant proceeding in quo warranto, brought by the District Attorney of Philadelphia as relator, challenges the right of Mr. Pastorius to hold office as Treasurer of Philadelphia. Relator contends that "under the provisions of the Constitution and the laws in existence on January 7, 1952, the Governor of Pennsylvania did not have the power to fill a vacancy in the office of City Treasurer of Philadelphia" and that, therefore, the appointment of Mr. Pastorius to that office was null and void.

Inasmuch as this case presents no factual issues, defendant filed preliminary objections in the nature of a demurrer to relator's complaint, and the matter is before us for disposition on the questions of law involved.

Governor Fine of Pennsylvania appointed defendant to the post of city treasurer on the authority of the Act of April 17, 1905, P. L. 176, sec. 1, 16 PS §1454, which provided that:

"Any vacancy occurring by death, resignation or otherwise, in the office of county treasurer, in any county of this commonwealth, shall be filled by the appointment of any eligible person by the governor. . . ."

Plaintiff, in his complaint, has not questioned the validity of the above act, but contends, rather, that is not applicable to the office of city treasurer. It is plaintiff's contention that vacancies in this office must be filled in conformity with the laws relating to the government of the City of Philadelphia, and that the statute under which Governor Fine purported to act is limited in its application to county offices.

It is clear that, prior to November 6, 1951, the Governor had the power to fill vacancies in the treasurer's office, for at that time it was a county office, governed by the constitutional provisions and laws applicable to such offices: Article 14, sec. 1, Pennsylvania Constitution. On the above date, however, it became an office of the City of Philadelphia, by virtue of an amendment to the Constitution: Article 14, sec. 8.

The City-County Consolidation Amendment, as article 14, sec. 8, is commonly known, provides in clause (1) that:

"In Philadelphia all county offices are hereby abolished, and the city shall henceforth perform all functions of county government within its area through officers selected in such manner as may be provided by law."

Clause (7) of the amendment provides that: "Upon adoption of this amendment all county officers shall become officers of the City of Philadelphia. . . ." The change from county to city offices was immediate upon the adoption of the amendment, inasmuch as the quoted provisions have been held to be self-executing: Lennox v. Clark, 372 Pa. 355 (1953).

The basic issue raised by plaintiff's complaint in quo warranto is whether, notwithstanding the adoption of the City-County Consolidation Amendment, the Governor still possessed the power to fill a vacancy in the office of treasurer at the time of defendant's appointment to office.

4

While the county offices were abolished by the City-County Consolidation Amendment and their functions were taken over by the City of Philadelphia, the amendment continued the former county officers as officers of the city, ". . . and, until the General Assembly shall otherwise provide, . . . to perform their duties and be elected, appointed, compensated and organized in such manner as may be provided by the provisions of this Constitution and the laws of the Commonwealth in effect at the time this amendment becomes effective, . . . :" Article 14, sec. 8, cl. (7), Pennsylvania Constitution.

Plaintiff contends that the relevant constitutional provisions and laws, under the amendment, are those dealing with city officers, and that the law specifically applicable to the instant case is the Consolidation Act of February 2, 1854, P. L. 21, sec. 10, 53 PS §6741. Prior to the adoption of the Constitution of 1874, the above act governed the office of treasurer in the City of Philadelphia. In 1891, however, it was held, in the case of Commonwealth v. Oellers, that, by virtue of the Constitution of 1874 and the Act of March 31, 1876, P. L. 13, the office of treasurer in Philadelphia was a county office and that therefore the Act of 1854 was no longer applicable: Commonwealth v. Oellers, 140 Pa. 457 (1891). Following the decision in the Oellers case, legislation was enacted which repealed much of the Act of 1854. Section 10 of the act, the section dealing specifically with the office of treasurer was, however, neither repealed nor superseded. Plaintiff now contends that inasmuch as the office of treasurer is once more a city office, it is again governed by the provisions of section 10 of the Act of 1854; that under the act the filling of vacancies in the treasurer's office was a city function, and not the function of the Governor of the Commonwealth, and therefore the appointment of de-

fendant to the office of city treasurer was invalid and must be set aside.

While superficially plaintiff's argument appears to be cogent, it is, in fact, basically unsound. First, it is unrealistic. The Act of 1854 is an anachronism, dead, but not buried. While it has remained, unrepealed, upon the statute books, its survival appears to be the result of historical accident rather than legislative design. Its provisions are archaic and unenforcible, for, under the act, vacancies in the treasurer's office were to be filled by viva voce vote of the common and select councils, which divisions are no longer in existence.

Secondly, prior to the adoption of the Home Rule City Charter on January 7, 1952, the officers of the City of Philadelphia were governed, not by the obsolete Consolidation Act of 1854, but by the provisions of the Charter Act of June 25, 1919, P. L. 581, 53 PS §2901 et sec. The Charter of 1919 is not applicable to the instant case, for at the time of its enactment the treasurer's office was a county office and, therefore, while the charter makes mention of the treasurer's office, it contains no provision for the filling of vacancies in that office.

Finally, plaintiff's argument fails because it totally disregards the obvious intent of the framers of the City-County Consolidation Amendment. It is readily apparent, after even a casual perusal of the amendment, that clause (7) was intended as a limitation upon immediate city-county consolidation, so as to prevent a too sudden and precipitous change in the governmental structure of Philadelphia. To effectuate this purpose, clause (7) makes provision for the former county officers to "continue to perform their duties and be elected, appointed, compensated and organized in such manner as may be provided" by the law in effect

at the time of the adoption of the amendment. The usage of the word "continue" makes it evident that the law referred to in the amendment is not the Consolidation Act of 1854, a law admittedly dead for over 80 years, but rather the law which governed county offices immediately prior to the adoption of the City-County Consolidation Amendment. Further, clause (3) of the amendment provides that:

"All laws applicable to the county of Philadelphia shall apply to the City of Philadelphia."

The continued applicability of the county laws to the former county offices was expressly affirmed in Lennox v. Clark, supra. On page 370 of his opinion in that case, Mr. Chief Justice Stern stated. ". . . they (referring to the former county officers) will operate just the same as before and continue to perform their present duties until the next stage of the project (city-county consolidation) is entered upon, . . ."

It therefore follows that, although the treasurer is now a city officer, he remains subject to county law, insofar as his appointment to office is concerned, until such time as the General Assembly shall otherwise provide.

The remaining question, in the instant case, is whether, following the adoption of the City-County Consolidation Amendment, the General Assembly made any provision affecting the filling of vacancies in the office of city treasurer. The Supreme Court of Pennsylvania has answered that question in the negative by its decision in Lennox v. Clark, supra.

Although plaintiff admits that the General Assembly has not directly made enactments respecting the city treasurer's office, he contends that the General Assembly's power in this regard was expressly delegated to the City of Philadelphia by the provisions of the Home Rule Act of April 21, 1949, P. L. 665, 53 PS §3421, and that the Philadelphia Home Rule Charter,

adopted April 17, 1951, pursuant to the above enabling act, makes provision for the appointment of the city treasurer by the Finance Director: Home Rule Charter, sec. 3-202.

While Mr. Chief Justice Stern, in his decision in Lennox v. Clark, supra, expressly left open the question of whether the General Assembly had abrogated its power over the former county offices and vested it exclusively in the City of Philadelphia by the provisions of the Home Rule Act of 1949, he made it quite clear that only one phase of consolidation has been completed and that the limitations imposed upon consolidation by clause (7) of the City-County Consolidation Amendment were not overcome by the provisions of the Home Rule Charter. On page 370 of his decision, Mr. Chief Justice Stern stated:

"The one phase of [city-county consolidation] is completed in that the county offices are now a part of the municipal government and that all their officers and employes are now city officers and employes and as such bound by the provisions of the Charter concerning such officers and employes. But their *activities* or *functions* are not changed; they will operate just the same as before and continue to perform their present duties until the next stage of the project is entered upon, which is to accomplish what may be termed the *intra* city consolidation, that is, the reorganization or 'streamlining' of the municipal governmental structure, now enlarged by the acquisition of the former county offices. Since clause (7) of the City-County Consolidation Amendment provides that the county officers are to continue, now as city officers, to perform their duties 'until the General Assembly shall otherwise provide,' it would seem that any proposed reorganizations, regroupings, abolitions, or mergers, of the former county offices, designed the more advantageously to incorporate their functions into the existing municipal

8

structure, must wait upon action by the General Assembly."

While the instant question as to the power to fill vacancies in the former county offices did not arise in the Lennox case, in our opinion the above language indicates that any change in the method of filling such vacancies is dependent upon future action of the General Assembly and has not been effectuated by the mere application of the provisions of the Home Rule Charter. Furthermore, this determination is the only one consistent with the purpose behind clause (7) of the City-County Consolidation Amendment. The amendment was adopted six and one-half months after the adoption of the Home Rule Charter. If the limitations imposed upon consolidation by clause (7) of the amendment were overcome by the provisions of the charter, then the clause would be meaningless, and *complete* city-county consolidation would have taken place on January 7, 1952, the date the charter became effective, instead of waiting "upon action by the General Assembly." The City-County Consolidation Amendment must be construed in a manner consistent with its manifest meaning and purpose.

We therefore hold that vacancies in the office of city treasurer must be filled in accordance with the Act of April 17, 1905, P. L. 176, sec. 1, 16 PS §1454, the law governing the county office of treasurer, until such time as the General Assembly shall otherwise provide. Inasmuch as the appointment of Francis Daniel Pastorius, 5th, to the office of City Treasurer of Philadelphia was made in accordance with that act, he presently holds that office rightfully and in accordance with the law.

The preliminary objections to plaintiff's complaint in quo warranto are hereby sustained and the complaint dismissed.