# Taggart *versus* Commonwealth of Pennsylvania, *ex rel.* The Attorney-General.

1. By virtue of the provisions of the Constitution of Pennsylvania of 1874, art. XIV. § 1, and of the Act of March 31st 1876, § 17, the office of " City Controller " of the city of Philadelphia was made a county office, and by virtue of the provisions of the Act of May 15th 1874, the Governor of the Commonwealth is authorized to fill a vacancy occuring in said office, by and with the consent of the senate.

2. The city councils of Philadelphia have no power to fill a vacancy occurring in said office.

3. The title of the Act of March 31st 1876, to wit : " An Act to carry into effect § 5 of art. XIV. of the constitution, relative to the salaries of county officers, and the payment of the fees received by them into the state or county treasury, in counties containing over one hundred and fifty thousand inhabitants," is sufficiently indicative of all the provisions enacted in said Act, to comply with the constitutional requirement relating to the title of Acts of Assembly.

4. The fact that in the Act of June 11th 1879 (P. L. 130) the controller of Philadelphia is referred to as " City Controller " and the fact that several ordinances of councils, passed since the Act of 1876, imposed duties upon him as " City Controller " do not change his status as a county officer.

February 15th 1883.    Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Green, JJ.    Clark, J., absent.

Error to the Court of Common Pleas No. 3, of *Philadelphia county :*    Of January Term, 1883, No. 316.

Quo warranto, issued by the Commonwealth of Pennsylvania, ex relatione the Attorney General, against William M. Taggart, commanding him to appear and show by what warrant he claims to hold and exercise the office designated as City Controller of the city of Philadelphia.

The information or suggestion filed by Lewis C. Cassidy, Esquire, Attorney General of the Commonwealth, was as follows :—

. . . That by an Act of the General Assembly of this Commonwealth entitled "A further supplement to an Act entitled an Act to incorporate the city of Philadelphia," approved the second day of February 1854, to which act reference is craved as if the same were fully and at large herein set forth, there were created the offices in the said act enumerated, and among others the office of City Controller.

That by the first section of the fourteenth article of the constitution of Pennsylvania, it was provided as follows :—

" Section I.    County officers shall consist of sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners, treasurers, surveyors, auditors or controllers, clerks

[Taggart v. Commonwealth.]

of the courts, district attorneys, and such others as from time to time may be established by law."

That at the general election held under the constitution and laws of this Commonwealth on the Tuesday next following the first Monday of November, 1874, Samuel P. Hancock was elected by the qualified voters residing within the territorial limits of the said city and county of Philadelphia, to fill the office designated by the said voters as City Controller, and that the said Samuel P. Hancock assumed and entered upon the duties of the office to which he had been thus elected, and continued to hold the said office until the first day of January, A. D. 1878.

That at the general election held under the constitution and laws of this Commonwealth on the Tuesday next following the first Monday of November, 1877, Robert E. Pattison was elected by the qualified voters residing within the territorial limits of the said city and county of Philadelphia, to fill the office by them designated as City Controller, from the first day of January 1878, to the first day of January 1881, and that the said Robert E. Pattison entered upon and assumed the duties of the office to which he had been thus elected for the term of three years from the first day of January 1878.

That the said Robert E. Pattison was re-elected at the general election held on the Tuesday next following the first Monday of November 1880, by the qualified voters residing within the territorial limits of the city and county of Philadelphia, to the office designated by them as City Controller for the term of three years from the first day of January 1881, and that the said Robert E. Pattison entered upon and assumed the duties of the office to which he had thus been elected.

That on the sixteenth day of January, 1883, the said office became vacant in consequence of the said Robert E. Pattison entering upon and assuming the duties of the office of Governor of the Commonwealth of Pennsylvania, to which he had been duly elected, and that thereby a vacancy was created in the said office to which the said Robert E. Pattison had been elected on the Tuesday next following the first Monday of November A. D. 1880.

That thereupon the councils of the city of Philadelphia elected William M. Taggart to fill the vacancy thus created, and the said William M. Taggart subsequently gave security for the faithful performance of the duties of said office, which security was approved by the City Councils and Mayor of said city, and the said William M. Taggart has taken and subscribed an oath faithfully to discharge the duties of said office, and has openly and publicly proclaimed himself as the incumbent of said office; and the Attorney-General admits that assuming that the said Councils had authority to fill the said vacancy

[Taggart *v.* Commonwealth.]

said William M. Taggart was duly elected, and he further admits, assuming as aforesaid, that the said William M. Taggart thereafter became duly qualified to enter upon and assume the duties of the said office.

But the Attorney-General further gives the court to understand and be informed that the councils of the city of Philadelphia had no authority in law to fill the said vacancy, the said authority being by the Constitution and laws of this Commonwealth vested in the governor of the said commonwealth; but, notwithstanding the premises, the said William M. Taggart unlawfully intrudes himself into the said office and usurps the same contrary to law, whereupon the Attorney-General suggests that the court award a writ directed to the sheriff of the said county of Philadelphia, commanding him to summon the said William M. Taggart to be and appear before the said court here on a day certain, to show by what warrant he claims to hold and exercise the said office.

Thereupon, by order of the court, a writ of quo warranto was issued as prayed for.

The defendant filed the following plea: That on the seventeenth day of January, A. D. 1883, the defendant was, by virtue of the laws of this commonwealth in that behalf provided, elected and appointed by the Select and Common Councils of the city of Philadelphia, in joint convention, City Controller of the said city, there being then a vacancy in said office, and the right to fill the same being then exclusively vested in the said councils, the duties of which office being prescribed by the said Act of the general assembly approved the second day of February, A. D. 1854, and the various supplements thereto, and by certain ordinances of the said councils, to wit: An ordinance approved the twenty-eighth day of February, A. D. 1856, entitled: "An ordinance to provide for the auditing of claims against the city before warrants are drawn for the payments thereof, and for other purposes;" another ordinance approved the tenth day of May, 1858, entitled: "An ordinance relating to certain city officers and departments;" another ordinance approved the sixth day of November, A. D. 1862, entitled "An ordinance prescribing the power and duties of the City Controller;" another ordinance approved the fourth day of May, A. D. 1872, entitled "An ordinance relative to the duties of City Controller and City Treasurer;" a resolution approved the twenty-fifth day of February, A. D. 1873, entitled "A resolution of instruction to the City Controller;" another resolution approved on the sixteenth day of June, A. D. 1873, entitled "A resolution placing a construction upon a resolution of request to the City Controller relative to countersigning warrants approved February 25th, A. D. 1873;"

[Taggart *v.* Commonwealth.]

an ordinance approved the 15th of December, A. D. 1874, entitled "An ordinance to regulate the printing and issue of warrants for the departments of the city of Philadelphia;" an ordinance approved the tenth day of December, A. D. 1878, entitled "An ordinance regulating the rate of interest to be paid on city warrants;" an ordinance approved on the twenty-first day of December, A. D. 1878, entitled "An ordinance to regulate the payment of bills for material and supplies under contract;" an ordinance approved the twenty-fourth day of December, A. D. 1878, entitled "An ordinance to systemize and arrange a better mode of keeping the accounts of the several departments of the city," to which said several ordinances leave is craved to refer as though the same were herein set forth at large.

And thereafter the defendant duly entered security for the faithful performance of his duties, which securities were duly approved by an ordinance of councils duly ordained and approved on the twenty-ninth day of January, A. D. 1883, and in due form took the oath of office, by force of which election and appointment so made as aforesaid he says he became lawfully authorized and empowered to take upon himself to exercise and enjoy the said office as City Controller aforesaid, and the franchises, rights and privileges thereto appertaining, and did thereupon accept and take upon himself the said office by virtue of the authority so to him granted by the said election and appointment and by virtue of the laws of this Commonwealth, all which he is ready to verify. Without this, that he the said defendant had usurped the said office, liberties, privileges, and franchises or any part thereof, in manner and form as in the said information is above supposed. Wherefore he prays judgment, and that the said office, liberties, privileges and franchises in form aforesaid claimed by him may be adjudged and allowed to him, and that he may be dismissed and discharged by the court of and from the premises.

The Commonwealth filed a demurrer to said plea, assigning the following causes of demurrer :—

1. Because it neither traverses nor confesses and avoids the substantial matters alleged in the said suggestion.

2. Because it does not tender or make any material issue upon or out of the said suggestion.

3. Because it introduces immaterial and irrelevant matters.

4. Because no certain or sufficient issue can be taken thereon.

5. Because it is in other respects uncertain, informal and insufficient.

The case was heard on the demurrer to the plea, and it was agreed between counsel, on the argument, "that the sole ques-

[Taggart *v.* Commonwealth.]

tion of record to be disposed of by the court is, whether the councils of the city of Philadelphia have the right to fill the vacancy, existing from the cause stated in the suggestion, in the office of City Controller of Philadelphia."

The court, after argument, gave judgment for the Commonwealth, on the demurrer, LUDLOW, P. J., delivering the following opinion :—

The questions presented for our consideration by the record in this case are not easily solved. That they are difficult and embarrassing is evident from the fact that conflicting opinions of many of the ablest members of the profession have been submitted to us, enforced by the arguments of the several counsel in the cause.

The interests of the city imperatively demand that this controversy shall end ; for, while it is important to select a proper person to fill this office, it is more important to clothe the incumbent, whoever he may be, with a title which will stand the test of legal criticism. We are fortunately relieved by the agreement of counsel from the consideration of mere technicalities, and we can, therefore, approach the consideration of the real question at issue. It is right, however, in passing, to remark that the respondent here claims to act by virtue of an election, followed by the approval of his securities and the oath of office, and we have undoubted authority for saying that the question of ouster does not depend upon this claim of right merely, but upon the question of " whether he has done any act which necessarily implies a claim to its exercise :" High on Extraordinary Legal Remedies 544, section 754, and authorities cited.

Passing now to the consideration of the main question, we remark that it must be remembered that the county of Philadelphia is an integral portion of the state, and must remain so. The city of Philadelphia, it is true, exists, and is co-extensive with the county itself, but its charter may be modified or repealed at the will of the legislative department of the government, and it differs from the county in that, while the whole commonwealth must be subdivided into counties, a city may or may not exist or be created, according to circumstances.

With this distinction kept constantly in view, we approach the consideration of constitutional questions.

The framers of the present constitution evidently intended to devise a system which should bear equally upon every citizen and all interests of the commonwealth. This intent is manifest from one end of the constitution to the other ; not only was special legislation to be abolished, but the whole machinery of the government was intended to move uniformly and harmoniously.

To execute the functions of government certain offices were

established, some related to the whole commonwealth, such as those embraced within the executive, judicial and legislative branches of the government, others to counties only, such as county officers; and it is specially to be noted that while these officers are recognized and named, the offices themselves are not left to legislative caprice or dependent upon popular will.

They are imbedded in the organic law, and cannot be changed without an amendment of the constitution.

If it became imperative to make a "county officer" a constitutional one, and that each political subdivision of the state should be furnished with certain officials, holding by virtue of an exalted title, then every officer named in article XIV., section 1, was specified for a well-defined purpose, and to preserve a government uniform in all its parts, and of universal application throughout the commonwealth. To strike down one or more of these officers, or to say that any one has only a nominal or figurative existence, is to mar, if not to destroy, the symmetrical proportions of the whole fabric.

In the article of the constitution now the subject of controversy, among other officers named, are "auditors or controllers." Article XIV. section 1. These officers are declared to be "county officers." An "auditor" or "controller" of some sort may, therefore, be a "county officer." If the controller of the city of Philadelphia is not a county officer, then this county—the wealthiest and most populous—is without a county auditor or county controller, although the constitution requires such an officer for the proper organization of each county, and every other county of the commonwealth has an officer of this character. Is it possible, upon a fair construction of our laws, to arrive at such a conclusion?

That our apparently conflicting legislation can be harmonized, we think possible, and to extricate our system from a most embarrassing difficulty will be our object.

The confusion arises from confounding the city with the county, and by attempting to adjust to pre-existing legislation present constitutional provisions and laws.

Before the act of consolidation county auditors existed, and when it was deemed proper to vest in the councils of the city powers previously and elsewhere vested in "commissioners," the duties of a county auditor were transferred to a "city controller;" he then became an officer vested with that power which formerly belonged to a county auditor, superadded to which were certain duties cast upon him as a "city controller." He never ceased to be clothed with whatever power might be necessary to enable him to perform any duties which might appertain to the office of county auditor. When the article in the constitution relating to county officers was under consider-

ation, it is evident that, while a discussion arose as to the propriety of inserting "controllers" in it, it was finally determined to do so, and that with the full knowledge of the convention of the existing condition of affairs in the county of Philadelphia. "Controllers" were, therefore, as a fact taken out of any other category, and made "county officers." If we now simply accept this fundamental legislation, instead of attempting to reconcile it with previous special legislation in force in this county, we solve the difficulty, harmonize the system, and protect the financial interests of a city, which is subordinate to a county, by establishing an office incapable of destruction by simple legislation, and the incumbent of which stands, if he performs his duties faithfully, as a sentinel to guard alike the financial interests of both city and county.

This view is sustained, first, by legislation; second, by contemporaneous exposition. The Act of March 31st 1876, devolved upon the "controllers," with other officers, duties appertaining to county officers; it established a board of which the controller was a member, by the name of "county controller," and this board fixed the number of deputies and clerks required in the several offices, and adjusted the salaries of "each of said clerks and deputies," and by § 5, all county officers were to be paid by "fixed and specific salaries." By § 17 it is expressly declared that "city treasurers, city controllers and city commissioners," shall severally be regarded as county officers, and as such shall severally be subject to all the provisions of this act.

If they "shall be regarded as county officers," and "as such," shall be subject to all the provisions of this act, the legislature has declared them to be such officers, and that (if it had not before been accomplished) by virtue of the clause contained in art. XIV. § 1, of the Constitution, which provides that county officers shall be those enumerated, "and such others as may, from time to time, be established by law."

Unless this legislation is unconstitutional and void, the question is settled. We are not prepared to pronounce it unconstitutional.

Contemporaneous exposition of the Constitution is all in favor of the construction we adopt. Before 1861, the "city controller" was elected at what was called the spring election. After that time he was elected at the only election held in the county, to wit, the general election in the fall. Since 1874, the "controller," with other officers, has uniformly been elected not at the February election, but at the general election in November of each year.

When it is remembered that the Constitution itself declares when the several elections for county and city officers shall be

[Taggart v. Commonwealth.]

held, art. VIII. sections 2 and 3, it is a most significant fact that only at an election when " county officers " could be elected has the "controller" been elected, and if the construction now contended for is the true one, then no controller for the period referred to has been legally elected in the city and county of Philadelphia. We might go further and show what an incongruity would arise should we give effect to section 46, Act of Consolidation (1854) : If an "elective officer of said city shall die or become incapable of fulfilling the duties of his office, . . . the vacancy shall be filled by a joint vote of the city councils until the next city election and the qualification of a successor in the office." It certainly will not be seriously contended that it was ever the intention of the framers of the Constitution, or of the legislature, that by the adaptation of old legislation to a new condition of things the people should be deprived of the right to elect the most important fiscal officer of the city for more than a year, because the officer elected by councils may continue in office until his successor is qualified.

The construction which leads to that result would seem to indicate a fundamental fault somewhere, destructive of the symmetrical system devised by the Constitution, enforced by legislation and practically applied by contemporaneous and uniform practice.

In conclusion, we desire to add that we see no danger to the city, or any of her interests, by holding that the city controller is a " county officer." The machinery designed to move the city government will not jar, but will continue to perform its functions smoothly as through the years which have passed.

The " controller " must continue to perform all the duties designated by law, and as the territorial boundaries of city and county are alike, he can, with even greater efficiency, perform every duty which devolved upon the subordinate officer known as the " city controller," by virtue of the higher constitutional prerogatives conferred upon him by the Constitution when it proclaimed him to be a " county officer."

Having arrived at the conclusion stated, it is clear that the councils of the city of Philadelphia had no legal right to elect the respondent to the office of controller. He has, therefore, no title to said office, and judgment upon the demurrer must be entered on record for the Commonwealth.

And now, February 9th 1883, judgment of ouster, as per Act of assembly in such case made and provided, is ordered to be entered of record.

YERKES, J., filed a dissenting opinion.

The defendant thereupon took this writ of error, assigning for error, the entry of judgment for the commonwealth on the demurrer.

[Taggart *v.* Commonwealth.]

*William Henry Rawle* and *William Nelson West,* city solicitor (with them *William A. Porter*), for the plaintiff in error.—The question is, In whom is the power vested of removal and filling a vacancy in the office in dispute? The court below, in their opinion, holds that the office of controller of the city of Philadelphia is a county office, but omits to determine the question in whom the power rests to fill a vacancy therein. It evidently assumes that being a county office the power is vested in the Governor. But that does not follow, unless it be shown that " provision is not already made (prior to the Act of 1874) to fill said vacancy;" for it is solely upon this proviso that the Governor's right to appoint is based, under the Act of May 15th 1874 (P. L. 205). But by the Consolidation Act of 1854, which created the office of city controller, provision was made for filling a vacancy therein. Section 45 of that Act vests the power of removal in the city councils, and section 46 provides for the reciprocal power of filling vacancies, as follows :

" Whenever any elective officer of said city shall die or become incapable of fulfilling the duties of his office, his place, except where other provision is made for filling the vacancy, shall be filled by a joint vote of the city councils, until the next city election and the qualification of a successor in the office."

This Act of 1854 was in force when the Act of 1874 was passed ; hence, under the provision of the Act of 1874, that the Governor shall fill vacancies only " where provision is not already made to fill vacancy " the Act of 1874 has no application to the office in dispute. Even if the provisions of art. XIV. of the Constitution and of the 17th section of the Act of March 31st 1876 (P. L. 13) make the city controller of Philadelphia technically a county controller, it does not affect the argument as to power of removal and filling vacancies. The change is only one of name and time of election ;. the incumbent is elected by the same constituents ; the duties and functions are the same ; the amenability to councils, the penalties and the term of office remain the same. In all fiscal concerns the functions of county officers of Philadelphia as distinguished from city officers have ceased: Philadelphia *v.* Commonwealth, 2 P. F. S. 454. The judgment of the court below should therefore have been for the defendant on the demurrer.

*Charles Henry Jones* and *James E. Gowen* (with whom were *Francis I. Gowen* and *Lewis C. Cassidy,* Attorney General), for the Commonwealth.—The Constitution of 1874 expressly made the office of controller a county office. Such was the intention of the constitutional convention and such has been the consistent interpretation of the clause. The controller of Philadelphia has always been elected at the time of the county elec-

[Taggart v. Commonwealth.]

tion not at the time of the municipal election. It was decided in Walsh v. Commonwealth, 8 Norris 421, that by the adoption of the Constitution the officers enumerated in the first section of the fourteenth article were ipso facto created for and attached to every county, and it necessarily follows that even if the office of city controller, existing at the date of the adoption of the Constitution, was not converted into a county office, the election for controller in November 1874, and each successive election, was for the constitutional office of controller, and that if there is a distinctive office of city controller it is in abeyance. The clause of the Act of 1876 to the same effect is merely declaratory of the Constitution. Its title is broad enough to embrace this provision : Blood v. Mercelliott, 3 Smith 391.

The office having become a county office, all the incidents of a county office attached to it. It would be inconsistent with established usage that a body like the city councils should elect a county officer, even for the purpose of filling a vacancy ; and the more especially would this be so since the office has been invested with new duties independent of its former relations to the city councils. All these considerations justify the conclusion that the case was within the Act of May 15th 1874 (P. L. 205), and that the vacancy in the office of city controller created by the withdrawal of the former incumbent was properly filled by the Governor.

Chief Justice MERCUR delivered the opinion of the court, February 19th 1883.

The first section of the Act of 2d February 1854 extended the boundaries of the city of Philadelphia so as " to embrace " the whole of the territory of the county of Philadelphia. While the boundaries of the city were thereby so enlarged as to make it co-extensive in territory with the county, yet the existing entirety of the latter was not destroyed. On the contrary, section 41 of the Act, inter alia, declares " the county of Philaadelphia shall continue to be one of the counties of this Commonwealth." Neither subsequent legislation nor the Constitution of 1874 has destroyed the existence of the county either in fact or in name.

The 12th section of the Act of 1854 provided for the election of a city controller at the time designated for the election of other municipal officers. After imposing on him certain specific duties, it declares " he shall perform all the duties now enjoined by law on the county auditors."

Under the name of city controller an officer was exercising the powers and performing the duties of county auditors when the convention to amend the Constitution met in 1872. At

that time an officer designated controller, was exercising like powers and performing like duties in the county of Allegheny.

In determining what class of officials should be designated county officers, the convention manifestly had in view those whose duties were coextensive with the boundaries of the county, and the character of the duties which they performed, rather than the names by which they were called. The purpose was to deal with duties, using names so far only as to indicate the objects to be attained. Hence art. XIV. § 1, declares " county officers shall consist of sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners treasurers, surveyors, auditors or controllers, clerks of the courts, district attorneys and such others as may from time to time be established by law."

While this language does not, in express terms, order that the several officers named shall be elected, yet it does expressly declare when officers do exist who bear those official titles they shall be county officers. The fair import of the language " auditors or controllers," in the connection it is used with other official titles, admits of one construction only. It assumes that each substantially exercises the same powers and performs the same duties, and when those powers and duties are coextensive with a county, by whichever name they may be designated, they shall be county officers.

We must not forget that the Constitution recognizes the fact that controllers then existed and performed the duties of county auditors. In seeking for the true interpretation of the reference to the officers in the alternative, we must give a reasonable and natural effect to the language used, so as to carry out its manifest purpose. Thus reading it, we conclude it fairly imports, whether the duties of auditors appertaining to a whole county be performed by one called a controller or by those called auditors, in either case the organic law declares them to be county officers.

Suppose, however, the construction which we give to the words " auditors or controllers " was doubtful, the section proceeds to designate as county officers " such others as may, from time to time, be established by law." This clearly gives to the law-making power full authority to add to and increase the number of county officers. If the words " auditors or controllers " did not make controllers thereafter elected in Philadelphia county officers, legislative authority under the clause cited is most ample to so make them. The form of law by which this power may be exercised rests in the sound discretion of the legislative branch of the government. It may be done either by the creation of a new officer whose powers and duties extend over the whole county, or by so designating an existing officer

[Taggart v. Commonwealth.]

of like powers and duties.   Hence, in the exercise of legislative power expressly given by the constitution, section 17 of the Act of 31st March 1876, P. L. 13, declares " in all cases where a city containing over three hundred thousand inhabitants is co-extensive in boundaries with the county, all of the officers known therein as city treasurer, city controller, city commissioners, shall severally be regarded as county officers . . . . . . and be subject to the same penalties as if they had each been elected or appointed as county officers, and had been designated as such."

This section was intended to apply and does apply to the city of Philadelphia, and to all the officials named in the section who had theretofore been known as city officers.   It recognizes the fact that prior thereto, an officer known as city controller, had performed in this city, the duties of a county officer: but it substantially declares that any such officer thereafter elected, shall be regarded as a county officer with like effect as if expressly designated as such, when elected.   Why then shall he not be held and be adjudged in law and in fact, to be a county officer ?

It cannot successfully be contended that the title to this Act of 1876 contains more than one general subject, or that it is not expressed with sufficient clearness therein.   It is entitled " An Act to carry into effect section five of article fourteenth of the Constitution relative to the salaries of county officers, and the payment of fees, received by them into the state or county treasury, in counties containing over one hundred and fifty thousand inhabitants."   The title of the Act is an epitome of the section of the Constitution to which it refers.   The designation of those officials who should be considered county officers was a natural corollary of the title, and proper to give due effect to that part of the constitution which the Act proposed to enforce.   All the provisions of the Act relate, and are cognate, to the purpose stated in the title.   This is complying with the requirement of the constitution as to the sufficiency of the title : Blood v. Mercelliott, 3 P. F. Smith 391 ; Commonwealth v. Green, 8 Id. 226 ; Yeager v. Weaver, 14 Id. 425 ; Allegheny County Home's Appeal, 27 Id. 77 ; State Line & Juniata Railroad Co.'s Appeal, Id. 429 ; Craig v. First Presbyterian Church, 7 Norris 42.

This Act of 1876 which declares the controller of Philadelphia shall be considered a county officer, fixes his salary at a specific sum, and declares it shall be in lieu of all moneys, fees and perquisites.   Without this Act no provision is made for his payment.

We have not overlooked the facts, so ably argued, that the Act of 11th June 1879, P. L. 130, refers to the officer as " the

[Winton *v.* Freeman.]

city controller," and that several ordinances passed by councils since the Act of 1876 impose duties on him as city controller.

Whether all these duties and obligations are lawfully imposed on the controller, as well as to what extent a county officer may be subjected to the authority of the city councils, are questions not before us, and we express no opinion thereon. We merely hold that neither the reference in the Act of 1879 nor the ordinances of the city are sufficient to change the legal status of one otherwise a county officer. They cannot divest the name of county officer stamped on the controller by the Constitution, and reaffirmed by express legislative authority.

The Constitution declares the general election shall be held in November, and that all elections for city officers shall be held in February. It further declares that county officers shall be elected at the general election. Referring to contemporaneous interpretation we find that ever since the adoption of the Constitution, the controller in Philadelphia has been elected at the general election in November. The recognition that he is a county officer has thus been in harmony with the construction which we put on the Constitution and the Act of 1876. They both declare him to be a county officer. He is elected as such. The statute provides for the fixing of his salary as a county officer. As such he receives his compensation. By that name and title he must stand.

It follows that the councils were not authorized to appoint any person to fill the vacancy caused by the resignation of the previous incumbent, and the plaintiff in error has no title to the office. The Act of 15th May 1874, P. L. 205, gives the right of nomination to the Governor, and with the consent of the Senate, the power of appointment. The learned court was therefore right in entering judgment of ouster.

Judgment affirmed.

GORDON, J., dissented.