# Patton's Election.

*Election law—Contested election—Costs—Bond for costs—Act of April 28, 1899, P. L. 118—Constitutional law—Title of act—Bill of rights—Special legislation—Local legislation.*

1. The Act of April 28, 1899, P. L. 118, entitled, "An Act to amend the ninth section of an act entitled, 'An Act designating the several classes of contested elections in this commonwealth, and providing for the trial thereof,' approved the nineteenth day of May A. D. 1874, providing that the costs in certain cases shall be placed on the petitioners," is sufficiently comprehensive in title to include the provision in the act requiring a bond to be entered with sureties for the payment of costs, as a condition of contest.

2. The Act of April 28, 1899, P. L. 118, in so far as it provides for the entering of a bond to secure the payment of costs in an election contest, does not violate that portion of the bill of rights which directs that "all courts shall be open, and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

3. The Act of April 28, 1899, P. L. 118, requiring a bond to be filed in an election contest does not offend against art. III, sec. 7, of the constitution of Pennsylvania which prohibits the enactment of any local or special law regulating the affairs of counties, cities, townships, etc.

Argued May 11, 1910. Appeal, No. 83, Oct. T., 1910, by W. A. McAdoo, from order of C. P. Armstrong Co., March T., 1910, No. 157, dismissing petition in election contest In re Election of Willis D. Patton, President Judge of the Thirty-Third Judicial District. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition in election contest. Before GALBRAITH, P. J., WILSON, P. J., and TELFORD, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was in dismissing the petition.

*S. S. Mehard*, with him *R. L. Ralston* and *Calvin Reyburn*, for appellant.—The Act of Assembly of April 28, 1899, P. L. 118, impinges upon and is in conflict with the fourteenth amendment to the constitution of the United States, which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws: Barbier v. Connolly, 113 U. S. 27 (5 Sup. Ct. Repr. 357); Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232 (10 Sup. Ct. Repr. 533); Durkee v. Janesville, 28 Wis. 464; Soon Hing v. Crowley, 113 U. S. 703 (5 Sup. Ct. Repr. 730); Connolly v. Union Sewer Pipe Co., 184 U. S. 540 (22 Sup. Ct. Repr. 431); Limestone Co. v. Fagley, 187 Pa. 193; Com. v. Zacharias, 181 Pa. 126; Ayars' App., 122 Pa. 266.

The act is unconstitutional and void in that it offends against art. VIII, sec. 17, of the constitution of Pennsylvania: Lavery v. Com., 101 Pa. 560; Com. v. Phila. County Commissioners, 8 S. & R. 151; McKeehan v. Com., 3 Pa. 151; Com. v. Johnson, 5 S. & R. 195; Irvin v. Northumberland County Commissioners, 1 S. & R. 505.

The act offends against and violates the declaration or bill of rights: Sharpless v. Mayor, etc., of Phila., 21 Pa. 147; Wyoming St., Pittsburg, 137 Pa. 494; Schade v. Luppert, 17 Pa. C. C. Rep. 460; Jack v. M'Clure, 26 Pa. C. C. Rep. 59; Lutz v. Heasley, 12 Pa. Dist. Rep. 139.

The act offends against art. I, sec. 1, of the constitution, which provides and declares " . . . . that all men are possessed of certain inherent, inalienable rights," one of these is the right to acquire and possess property: Mahon v. Luzerne County, 197 Pa. 1; Rutherford's Case, 72 Pa. 85.

The act is unconstitutional and void in that it offends against art. III, sec. 7, of the constitution of Pennsylvania: Frost v. Cherry, 122 Pa. 417; Com. v. Reynolds, 137 Pa. 389; McCarthy v. Com., 110 Pa. 243; Ayars' App., 122 Pa. 266; Melvin v. Summerville, 210 Pa. 41; In re Contested Election of O'Neil, 98 Pa. 461; Com. v. Dumbauld, 97 Pa. 293; Leib v. Com., 9 Watts, 200;

Godcharles v. Wigeman, 113 Pa. 431; Com. v. Zacharias, 181 Pa. 126; Sayre Boro. v. Phillips, 148 Pa. 482; Durkin v. Coal Co., 171 Pa. 193; Montgomery v. Com., 91 Pa. 125; Morrison v. Bachert, 112 Pa. 322.

*Floy C. Jones,* with him *J. H. Painter, H. N. Snyder* and *E. O. Golden,* for appellee.—The fact that the act has stood upon the statute books for many years without challenge is strongly persuasive that the act is constitutional: Lavery v. Com., 101 Pa. 560; Com. v. Gilligan, 195 Pa. 504; Rose v. Beaver County, 204 Pa. 372.

The act is constitutional: Com. v. Keystone Benefit Assn., 171 Pa. 465; Barber's Contested Election, 86 Pa. 392; Thomas's Election, 198 Pa. 546; Philadelphia v. Ry. Co., 142 Pa. 484; Yoho v. Allegheny County, 218 Pa. 401; In re Pottstown Boro., 117 Pa. 538; Millvale Boro. v. Evergreen Ry. Co., 131 Pa. 1; Com. v. Morgan, 178 Pa. 198; Lyon v. Dunn, 196 Pa. 90; In re Contested Election of Mathews, 92 Pa. 138; Lower Augusta v. Selinsgrove, 64 Pa. 166; Hoffman v. R. R. Co., 143 Pa. 503; Vose v. Cockcroft, 44 N. Y. 415; Com. v. Moir, 199 Pa. 534; Pulaski Twp. Poor Dist. v. Lawrence County, 222 Pa. 358; Thirty-eighth Ward Election, 35 Pa. Superior Ct. 256; Field v. Barber Asphalt Paving Co., 194 U. S. 618 (24 Sup. Ct. Repr. 784).

OPINION BY MR. JUSTICE STEWART, May 24, 1910:

Following the general election held November 2, 1909, the Honorable Willis D. Patton was duly returned as elected to the office of President Judge of the thirty-third judicial district, composed of the county of Armstrong. A petition to contest his election, signed by the requisite number of electors of the district, was duly filed with the Attorney General, and was by him transmitted to the Governor, who thereupon commissioned a court, appointed under the requirements of the law "to proceed to hear and determine the complaint of the said parties." The court convened January 27, 1910. The petition to

contest having been presented, the court ordered that the bond required by the Act of April 28, 1899, P. L. 118, conditioned on the payment of the costs by contestants in case they were adjudged to pay the same, should be in the sum of $20,000, and filed within ten days thereafter. Meanwhile, W. A. McAdoo, this petitioner, on his own behalf, and on behalf of other petitioners, presented his petition praying that the order with respect to the bond with sureties be vacated, on the ground that the act of assembly requiring such bond is unconstitutional and therefore void. After hearing, February 10, the court dismissed the petition. No bond having been filed within the statutory period, the petition to contest was accordingly dismissed. This appeal results. Several constitutional objections to the act are urged. The first to be considered is, that the provision requiring a bond to secure payment of costs, is not adequately expressed in the title of the act, and in this particular the act offends against art. III, sec. 3, of the constitution. The act is entitled, "An Act to amend the ninth section of an act entitled, 'An Act designating the several classes of contested elections in this Commonwealth and providing for the trial thereof,' approved the 19th day of May, A. D. 1874, P. L. 208, providing that the costs in certain cases shall be placed on the petitioners." An examination of the original ninth section will show that it deals exclusively with the matter of costs, and specifically provides, that "if the court or judge shall decide that the complaint is without probable cause, the petitioners and every of them shall be jointly and severally liable for all the costs, and that the same may be collected as debts of like amount are by law collectible, or payment thereof may be enforced by attachment." The change introduced by the amended act is the requirement of a bond with sureties for payment of costs, as a condition of contest. True it is that this particular change does not appear in the title to the amending act; but was it necessary that it should? The act of 1874, passed in obedience to the

constitution directing that the general assembly shall
"by general law" designate the courts and judges by
whom the several classes of election contests shall be
tried, and regulate the manner of trial and all matters
incident thereto, provides a general scheme or system
for the determination of all such contests; it classifies
them; distinguishes between them with respect to the
tribunal before which they are to be heard; provides how
the proceedings are to be instituted, regulates the man-
ner of trial, and makes provision for the costs in each case.
The sufficiency of the title to this act cannot be ques-
tioned; it reads, "An Act designating the several classes
of contested elections in this Commonwealth and provid-
ing for the trial thereof." Had the provision requiring
bond for the securing costs appeared in this original act,
it could not have occurred to anyone that it was not
embraced in the title, or that it was not there sufficiently
expressed. As was said in Taggart v. Com., 102 Pa. 354,
the requirements of the constitution, with respect to the
sufficiency of title, are fully met when the title is an
epitome of the section of the constitution to which it
refers, and the legislation relates and is cognate to the
purpose stated in the title. It is not required that the
title should be a complete index of the contents of the
act. If this particular provision with respect to the bond
could have been sustained, had it appeared in the original
act it follows that the amending act is not open to the
objection urged. We have held in a number of cases,
notably in State Line & Juniata R. R. Co.'s App., 77
Pa. 429, and In re Pottstown Borough, 117 Pa. 538, that
in the case of a supplement, when the subject of an origi-
nal act is sufficiently expressed in its title, and when the
provisions of the supplement are germane to the subject
of the original, the true rule is that the subject of the
supplement is covered by a title which contains a specific
reference to the original by its title, and declares it to be
a supplement thereto. It is evident that all that was in-
tended by the title to the present amendment, was to

direct attention to the original act to which it was supplementary. The words "providing that the costs in certain cases shall be placed on the petitioner," were not meant to indicate any change by the amendment, but only what was the particular subject of the ninth section of the original act, distinguishing it from the other sections.

No other objection than the one just considered was made in the court below, and we might end the discussion here. But public interests are to be considered when the issue involves so much that directly concerns the people at large. The administering distributive justice is something which our people have always prized as the chief end of government. The judicial office is so closely related to this function that they have sought to guard it with jealous care. The degree of confidence which the public yields to our judicial tribunals measures very largely their efficiency and usefulness. Anything that tends to subtract in any way from public confidence in them, is to be avoided. Where doubts prevail as to the constitutional and legal right of an incumbent to exercise the high function of the judicial office, to a greater or less extent confidence is withheld. It is this consideration which makes us willing to pursue the discussion further.

While the act of 1874 as amended is attacked from various points, the one provision to which all attacks are directed, is that requiring a bond with sureties for the payment of costs. First, it is argued that it offends against the bill of rights which provides that "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." It is insisted that the act is a practical denial of free and open access to the courts. The argument in support of this position proceeds on the assumption that the individual who claims to have received a majority of the votes cast at the election, has such a right in the office as is within the contemplation of the provision

referred to. This assumption is unwarranted. The individual so claiming is invested with no right that is not common to all citizens. He is not distinguished as a contestant from other petitioners, either in the constitution or the laws passed thereunder. The purpose of the constitution, in this connection, is not to defend or protect any individual right to office, but to secure a correct and honest expression of the public choice. The act declares a public policy in connection with the settlement of disputes about elections solely in the interest of the public. It interferes with no vested rights. As well argue that the provision which allows a contest only on petition of fifty qualified electors of the district, is a denial of free access to the court. It is not to be supposed that it was within constitutional intendment that the individual elector was to have the right to institute a contest to enforce a supposed right of his own. In conferring upon the legislature the right to regulate the matter of trial and all matters incident thereto, the power was given to prescribe such reasonable conditions for the exercise of the right of contest, as would protect the public from the constant and continued strife which would result were the right an individual one. Courts would have little time for anything besides contested elections, were every disappointed candidate given the right upon his own initiative to institute such contest. In view of such fact the act might well be defended as a proper exercise of the general power inherent in all governments to provide for the safety and good order of society; but it needs no such vindication.

Again, it is urged that the act offends against art. III, sec. 7, which prohibits the enactment of any local or special law regulating the affairs of counties, cities, townships, etc., inasmuch as the elections affected by the act are "affairs" of the counties or districts where the officers are to be elected, and where they are to exercise their office. The contention goes no further than to assail the provision with respect to the placing of the costs. Giving to the word "affairs" the broad and liberal con-

struction contended for, and bringing within its meaning
the elections for public offices in the county or district,
it is not easily apparent how the act is either local or
special. Its provisions apply throughout the common-
wealth, and to every proceeding where the contest is in
regard to certain designated offices. The real complaint
here is not so much that the act is local, but that it is
discriminatory in character to such an extent as to make
it in effect special legislation. As required by the con-
stitution the legislature in the act of 1874 classified elec-
tion contests, and designated the courts and judges by
whom the several classes were to be tried. The classes
are (1) governor and lieutenant governor, (2) electors of
president and vice president of the United States and all
officers of this commonwealth required to be elected by
the qualified electors of the state at large, (3) the judges
of the several courts of record, learned in the law, other
than judges of the Supreme Court, and (4) all other
officers, excepting members of the general assembly,
whether elected by the qualified voters of counties, cities,
townships, boroughs, wards, school districts, or any other
division of the state. The provision in the amended act
requiring bonds for security of costs is made to apply
not generally to all these classes, but only to contested
elections of presidents or additional law judges of counties,
borough, township, municipal offices, or school directors,
or school comptrollers. Herein is the discrimination com-
plained of. The exemption allowed petitioners in con-
testing an election for the office of associate judge, which
in the act is classified with the office of president judge
and county officers generally, is noticeable. Nothing can
be gathered from any expression in the act itself as to the
legislative purpose in relieving them from the bond re-
quirement. It does not follow from this, however, that
the act is to be condemned. The question is not what the
purpose was, but whether the provision is special in the
constitutional sense. If we admit that the act is one
regulating the "affairs" of counties, for the reasons

urged, which are far from convincing to us, and it is
therefore to be judged by the constitutional provision
which prohibits special legislation in regard thereto, the
question remains, how and where does it offend? That
it is special, if we have regard simply to the classification
adopted by the legislature in the act, is unquestionably
true. But we must not lose sight of the purpose of this
classification. The constitution having directed that the
determination of contested elections should be by the
courts of law, committed to the legislature the duty of
designating the courts and judges by whom the several
classes of contests should be tried. This the act in ques-
tion does. Can it be said that under the power given the
legislature to regulate the manner of trial, and all matters
incident thereto, it may not distinguish the mode of
procedure and conditions of contest, having regard to the
nature and character of the offices, between those contests
which for purpose of convenience it has associated in the
same class? The primary, if not sole purpose of the con-
stitutional provision, was to send all election contests
into the courts of law. The power of the legislature to
regulate the trial of each is subject to no limitations,
except that it may not be employed to defeat the provision
itself. The classification adopted was not to defeat, but
to give effect to the constitutional requirement, and is a
perfectly natural and reasonable classification, having no
other purpose than to indicate the appropriate court for
each of the several contests. It was not made to furnish
a basis for the legislation that was to follow with respect
to regulation of trial and the matters incident thereto.
Except as legislation is allowed with respect to the particu-
lar classified subject, not touching the consideration or
purpose of its classification, either much necessary legis-
lation must be halted, or classification must necessarily
be a matter of almost infinite detail. The constitution
requires neither. The distinction pointed out in the act
is no offense against its own classification. For still more
obvious reasons it does no violence against the provision

of local legislation. The act applies throughout the commonwealth, and is applicable to each and every county. If it imposes unwise regulations governing election contests, either by making some too easily entered upon, or by making others too difficult to conduct, still it is a matter of regulation within legislative discretion; and if correction be required there is but one way to obtain it, namely, through popular demand addressed to the lawmaking power.

Other objections have been urged, but in what we have said all have been sufficiently answered. Our conclusion is that the petitioners having failed to give bond in the amount required by the court, within the statutory period, for securing the payment of costs, in the event their being adjudged liable the petition for contest was properly dismissed. The appeal from that decision and decree is dismissed at the costs of the appellant.